UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIZARRGA JOSE FIGUEROA,<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | Case No. 1:26-cv-02967-JLT-FJS (HC)<br>(A-Number: 067-497-251)<br>ORDER DENYING PETITIONER'S MOTION TO APPOINT COUNSEL<br>(ECF No. 3)<br>FINDINGS AND RECOMMENDATIONS TO GRANT MOTION TO DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br>(ECF No. 1)<br>FOURTEEN (14) DAY DEADLINE |

Petitioner Lizarrga Jose Figueroa ("Petitioner") is an immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on April 20, 2026, together with a motion to appoint counsel. (ECF Nos. 1, 3.) He challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be provided a bond hearing before an immigration judge where the government must justify his continued detention by clear and convincing evidence. (ECF No. 1.)

On May 2, 2026, Respondents filed a motion to dismiss the petition. (ECF No. 9.) Petitioner did not file a reply, but on June 1, 2026, filed a notice of pending appeal of order of removal. (ECF No. 11.) Respondents filed a response to the notice on June 2, 2026. (ECF No. 12.) Following a routine review of the EOIR public database revealing that Petitioner's appeal from his order of removal was still pending, District Judge Jennifer L. Thurston ordered Respondents to file a supplemental brief providing any alternative grounds for Petitioner's detention.[1] (ECF No. 13.) Respondents filed a response on June 26, 2026. (ECF No. 14.)

For the reasons discussed below, the court will deny the petition.

## I. BACKGROUND

Petitioner is a native and citizen of Mexico. (ECF No. 14 at 8.) On June 18, 2021, he was accorded the status of a Lawful Permanent Resident of the United States. (*Id.*)

On or about August 8, 2024, Petitioner was convicted in the Superior Court of Arizona, Maricopa County, for the felony offense of Attempt to Commit Unlawful Sexual Conduct by a Custodian, Arizona Statute § 13-1419A, and was sentenced to two years of probation. (*Id.*) On or about June 6, 2025, he arrived at the Los Angeles International Airport and applied for admission as a Lawful Permanent Resident of the United States. (*Id.* at 13.) On June 11, 2025, he was served with a Notice to Appear and placed into removal proceedings. (*Id.* at 9.) Petitioner has been continuously detained since June 6, 2025. (ECF No. 1 at 6.)

Respondents assert that Petitioner secured continuances from the immigration court on his removal proceedings on seven occasions between July 2025 and March 2026. (ECF No. 14 at 2, n. 1.) On January 6, 2026, Petitioner withdrew his request for a bond hearing. (*Id.* at 79.) On January 30, 2026, the immigration judge denied Petitioner's request for bond, finding that the Department had met its burden to establish that Petitioner is a danger to the community. (*Id.* at 82.)

---

[1] On July 6, 2026, the court's June 23, 2026, minute order was returned as "Undeliverable, RTS, not deliverable as addressed, unable to forward." During these proceedings, Petitioner has filed multiple changes of address. (ECF Nos. 15, 16.) The most recent change of address was filed on August 17, 2026. (ECF No. 17.)

On April 1, 2026, the immigration judge ordered Petitioner removed to Mexico. (*Id.* at 74–77.) On April 30, 2026, Petitioner appealed the immigration judge's decision to the Board of Immigration Appeals ("Board"). *See* Executive Office for Immigration Review Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/, (search conducted utilizing Petitioner's alien number). Petitioner's appeal is currently pending. *Id.*

Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to his Crime Involving Moral Turpitude ("CIMT") conviction per 8 U.S.C. § 1182(a)(2)(A)(i).

## II. DISCUSSION

### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). *See Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Mandatory Detention under 8 U.S.C. § 1226(c)

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). Section 1226(c)(1)(A) mandates detention of any alien convicted of a crime involving moral turpitude pursuant to 8 U.S.C. § 1182(a)(2)(A)(i). Petitioner's conviction under Arizona Statute § 13-1419, Felony Attempt to Commit Unlawful Sexual Conduct by a Custodian, based on Petitioner engaging in sexual intercourse with an inmate while employed as a correctional officer, is a crime involving moral turpitude. *See Nunez v. Holder*, 594 F.2d 1124, 1132 (9th Cir. 2010) (in context of sexual offenses, whether the crime involves moral turpitude turns on whether there is (1) actual harm or (2) a protected class of victim). Thus, Respondents' position that Petitioner is subject to mandatory detention under section 1226(c) is correct.

Section 1226(a) permits the Attorney General to release aliens on bond, "[e]xcept as provided in subsection (c)." Section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) then states that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original). *Jennings* holds that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (citing 8 U.S.C. § 1226(a)). Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative *prohibition* on releasing detained aliens under any other conditions." *Id.* at 304 (emphasis in original). Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.* Here, Petitioner does not meet the conditions for release. Therefore, statutorily, section 1226(c) mandates detention. *Alivez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023).

C. Due Process in Prolonged Immigration Detention

Nevertheless, Petitioner contends his detention has become unreasonably prolonged because there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner contends he has been unreasonably detained for over a year without a substantive bond hearing in violation of his due process rights. He argues that due process requires he should be released from custody or provided a bond hearing. (ECF No. 1.) Respondents assert that Petitioner received a bond hearing in January 2026, where the immigration judge found Petitioner to be a danger to the community and denied his request for bond. Respondents argue that if Petitioner disagrees with the immigration judge's determination, he should file an appeal with the BIA. (ECF No. 14.)

Although the Ninth Circuit has clarified that there is no statutory right to a detention hearing under section 1226(c), whether the Due Process Clause imposes a right to a detention hearing is an open question in this Circuit. *Avilez*, 69 F.4th at 538. *See also Rodriguiez Diaz*, 53 F.4th at 1201 ("[I]t remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute") (emphasis in original). There is a split among the circuits that have addressed whether the Due Process Clause affords section 1226(c) detainees a right to a bond hearing. *Compare Black v. Decker*, 103 F.4th 133, 148–50, 155 (2d Cir. 2024), *with Banyee v. Garland*, 115 F.4th 928, 933–34 (8th Cir. 2024). The district judge assigned to this case endorses the view that a petitioner's as-applied constitutional challenge to detention under section 1226(c) is not foreclosed. *Russell v. Warden of the Cal. City of Immigration Processing Ctr.*, No. 26-cv-1231-JLT-EPG, 2026 WL 1481557, at *4 (E.D. Cal. May 27, 2026).

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore*, 538 U.S. at 531; *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure"). Moreover, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner's. The Ninth Circuit has noted that many courts have applied the *Mathews*[2] test in considering due process challenges in the immigration context.

---

[2] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

*See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims")). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). Still, many district courts in the Ninth Circuit, including this court, have employed the *Mathews* test in evaluating whether due process entitles a petitioner to a bond hearing when subjected to prolonged detention. *See, e.g., A.E. v. Andrews*, 1:25-cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025); *Jensen v. Garland*, No. 21-cv-1195-CAS (AFM), 2023 WL 3246522, at *4 (C.D. Cal. 2023); *Galdillo v. U.S. Dep't of Homeland Sec.,* No. EDCV 21-724 JGB (KKx), 2021 WL 4839502, at *3 (C.D. Cal. 2021); *Jimenez v. Wolf*, No. 19-cv-7996-NC, 2020 WL 510347, at *3 (N.D. Cal. 2020); *Riego v. Scott*, No. 24-cv-1162-SKO (HC), 2025 WL 660535 (E.D. Cal. 2025). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206–07. Thus, the court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a second bond hearing in a section 1226(c) detention.

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first factor, the court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger

and any risk of flight to avoid removal. Here, Petitioner has been detained approximately fifteen months. When analyzing a detention under section 1226(a) of a similar duration, the Ninth Circuit "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf II*, 634 F.3d at 1091). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011).

*Rodriguez Diaz* held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." *Id.* at 1213. In this case, Petitioner was given a bond hearing on January 30, 2026, where it was determined that he posed a risk of danger to the community. (ECF No. 14 at 82.) Respondents argue, and Petitioner does not contest, that Petitioner had the opportunity to present evidence and arguments at that earlier bond hearing.

In addition, Respondents allege that the prolonged detention is due to Petitioner's own actions. (ECF No. 14 at 1.) The Ninth Circuit held that delays attending petitioners' pursuit of appellate review tips against them in the first *Matthews* factor. *Rodriguez Diaz*, 53 F.4th at 1207–08; *Demore*, 538 U.S. at 530–31. ICE detained Petitioner on June 6, 2025. The immigration court granted seven continuances at Petitioner's request between July 2, 2025, and March 18, 2026. (ECF No. 14 at 2, n.1.) More recently, Petitioner was ordered removed to Mexico on April 1, 2026, but Petitioner appealed to the Board. (*Id.* at 74–77); *see* Executive Office for Immigration Review Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/, (search conducted utilizing Petitioner's alien number). *See Rodriguez Diaz*, 53 F.4th at 1208 ("We also cannot overlook that most of the period of [petitioner's] detention arose from the fact that he chose to challenge before the BIA and later this Court the [immigration judge's] denial of Immigration Relief"); *see Prieto-Romero*, 534 F.3d at 1063–65 & n.9 (holding that a non-

citizen's detention was not unconstitutionally indefinite when it was prolonged by a challenge to his removal order). Furthermore, Petitioner's "private interests are further diminished by the fact that he is subject to an order of removal from the United States." *Rodriguez Diaz*, 53 F.4th at 1208. In sum, Petitioner's detention of fifteen months is longer than the six-month presumptively reasonable period. But the delay is due to Petitioner's own actions. Thus, the first factor tips in favor of Respondents.

In the second *Matthews* factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," 424 U.S. at 335. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" *Jimenez*, 2020 WL 510347, at *3. Here, however, Petitioner received a bond hearing where an immigration judge inquired into his detention and concluded he posed a risk of danger to the community. (ECF No. 14 at 82.) *Rodriguez Diaz* held that a section 1226(a) detainee who had also received an earlier bond hearing before an immigration judge could not tip this second *Mathews* factor in his favor because "the agency's decision to detain [petitioner] was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker." 53 F.4th at 1210. And while Petitioner differs from a section 1226(a) detainee who may seek a bond redetermination based on changed circumstances, *Rodriguez Diaz*, 53 F.4th at 1195 (citing 8 C.F.R. § 1003.19(e)), Petitioner received the January 2026 bond redetermination despite section 1226(c)'s mandatory detention provision. The court concludes, therefore, that the probable value of offering a further bond hearing after the initial bond hearing is low. The second factor tips in favor of Respondents.

In the third factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). Yet as other courts have

recognized, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal conviction of a crime involving moral turpitude and a determination by an immigration judge that he posed a risk of danger.

In sum, Petitioner has not carried his burden under the *Mathews* test. Detention under section 1226(c) is mandatory, the prolonged period of detention is largely Petitioner's doing, he is subject to an order of removal, and the immigration judge found during a custody redetermination that Petitioner poses a risk of danger to the community if released. The court concludes that due process does not require Petitioner be provided a second bond hearing at this time. The Petition should be denied without prejudice to refiling in the future, should detention prove sufficiently prolonged after appeals of removal are exhausted and Petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 680.

III. <u>ORDER</u>

On April 20, 2026, Petitioner filed a motion for appointment of counsel. Title 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require." *See* Rule 8(c), Rules Governing Section 2254 Cases. In this case, the court is recommending the petition be denied. Therefore, the court does not find that the interests of justice require the appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore DENIED, without prejudice. (ECF No. 3.)

IV. <u>RECOMMENDATION</u>

For the foregoing reasons, the court hereby RECOMMENDS that Respondents' motion to dismiss, (ECF No. 9), be GRANTED and the petition for writ of habeas corpus be DENIED, without prejudice.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). Within <u>fourteen</u>

(14) days after being served with a copy of these findings and recommendations, a party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **September 17, 2026**

UNITED STATES MAGISTRATE JUDGE